IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
JOHN J. LYNCH, SR.,              :
                                 :
          Plaintiff              :    CIVIL ACTION
                                 :
     v.                          :
                                 :    NO. 11-cv-3579
VINCENT FENERTY, et. al.,        :
                                 :
          Defendants.            :
```

**MEMORANDUM AND ORDER**

**JOYNER, C.J.**                                         **July 24, 2012**

This Section 1983 action is presently before the Court for disposition of the Motion of Defendants, Officer Williams, Officer Badge No. 9550, and Officer Ryan of the City of Philadelphia Police Department, for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c)(Doc. No. 48). For the reasons that follow, the Defendants' motion is granted.

**Factual Background**

John J. Lynch Sr. ("Plaintiff"), *pro se*, sues, pursuant to 42 U.S.C. § 1983, Officer Williams, Officer Badge No. 9550, and Officer Ryan ("Defendants") of the City of Philadelphia Police Department in their individual and official capacities. (Compl. at 2.) Defendants allegedly deprived Plaintiff of his Fourteenth Amendment right to due process when they impounded vehicles on three separate occasions pursuant to Philadelphia Police

1

Department Directive 92, a/k/a the "Live Stop Policy," which is the city policy for implementation of Pennsylvania Vehicle Code § 6309.2, 75 Pa.C.S.  (Compl. ¶¶ 1-3.)  On each occasion, a different vehicle was towed following traffic violation citations.  (Compl. ¶¶ 1-3; See also, Defs.' Mot. Summ. J. at 3-4.)  Plaintiff seeks damages for loss of use of and failure to maintain the vehicles, as well as for insurance and registration fees paid during the vehicles' storage.  (Compl. at 8.)  Defendants do not dispute that these vehicles were towed, but seek summary judgment on the grounds that: (1) the officers are entitled to qualified immunity for their actions; (2) an adequate post-deprivation remedy was available to Plaintiff; (3) Plaintiff has not contested his March 3, 2011 traffic stop; and (4) Plaintiff was not the registered owner of the vehicle seized on March 22, 2011.

## Summary Judgment Standards

The Court shall grant summary judgment if there exists "no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A "genuine" dispute is one that can only be properly resolved by a finder of fact since the dispute may reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A "material" fact is one that "might affect the outcome of the suit under governing law." Id. at 248.  Any inferences to be drawn and doubts to be resolved should be done

so in favor of the non-moving party.  See, United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

## Discussion

Defendants do not dispute that the three vehicles discussed in Plaintiff's complaint were towed pursuant to the Live Stop Policy.  Plaintiff alleges he was deprived of property without due process of law as granted by the Fourteenth Amendment. (Compl. ¶¶ 1-3.)  The "fundamental requirement of due process is 'the opportunity to be heard at a meaningful time and in a meaningful manner.'"  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted).  Because due process is a flexible concept, procedural protections will vary dependent upon the demands of the particular situation.  Id. at 334.  The Fourteenth Amendment is not violated when and/or where an adequate post-deprivation remedy has been made available.  See, e.g., Hudson v. Palmer, 468 U.S. 517, 536 (1984).

The Live Stop Policy outlines the manner in which the Philadelphia Police Department enforces the impoundment provisions of the Pennsylvania Vehicle Code, 75 Pa.C.S. § 6309.2. (Ex. A; 75 Pa. Cons. Stat. Ann. § 6309.2 (West 2006).)  Under Section 6309.2, motor vehicles shall be immobilized or towed and stored if: (1) operated by either an unlicensed person or one

3

whose operating privilege is "suspended, revoked, canceled, recalled or disqualified;" or (2) the vehicle has either no registration or its registration has been suspended. §6309.2(a)(1), (2).

Plaintiff reads the language in Section 6309.2 regarding towing a vehicle "in the interest of public safety" to mean the officers should not tow an immobilized vehicle if it is not illegally parked or blocking traffic to create a hazard. (Compl. ¶ 5.)  We disagree.  The City of Philadelphia's authority to impound and tow vehicles "may derive from Section 6309.2 as well as from [its] community caretaking function." Commonwealth v. Thompson, 999 A.2d 616, 621 (Pa. Super. Ct. 2010).  Section 6309.2, in relevant part, states that once a law enforcement officer verifies that a motor vehicle has been operated while the operator is in violation of one of the above-listed offenses, then the officer "shall immobilize the vehicle . . . *or*, in the interest of public safety, direct that the vehicle be towed and stored . . . ." § 6309.2(a) (emphasis added).  This language, as written, provides law enforcement officers with the option to tow based on their determination of the interest of public safety. Accordingly, the City of Philadelphia's Live Stop Policy allows law enforcement officers to impound and tow all vehicles immobilized pursuant to Section 6309.2.  (Ex. A.)

4

Additionally, "Judges are not in a position to second-guess a police officer's decision to tow a vehicle which, in the officer's opinion, may create a traffic hazard." United States v. Abbott, 584 F. Supp. 442, 448 (W.D. Pa. 1984).  Moreover, a hearing is not required prior to towing a vehicle.  Mackay v. Jim Bowe Towing Conshohocken, No. 85-4506, 1985 U.S. Dist. LEXIS 16395, at *3 (E.D. Pa. Aug. 29, 1985); see also Allen v. Kinloch, 763 F.2d 335, 36 (8th Cir. 1985); Breath v. Cronvich, 729 F.2d 1006, 1010 (5th Cir. 1984); Sutton v. Milwaukee, 672 F.2d 644, 646 (7th Cir. 1982).  And, under Section 6309.2(b), Plaintiff had the opportunity to present proof of registration and financial responsibility by appearing "before the appropriate judicial authority within 24 hours" from the vehicle's immobilization.  In as much as Plaintiff has produced no evidence that he presented or tried to present such proof before an appropriate judicial authority, we find that judgment is properly entered in Defendants' favor on the merits of Plaintiff's claim.

What's more, we further find that this post-deprivation remedy amply satisfies the requirements of the Fourteenth Amendment; therefore, Plaintiff does not state a claim for a constitutional deprivation.  And, even if this post-deprivation remedy were not sufficient, Defendants could reasonably conclude that by implementing the Live Stop Policy in each of these incidents, they were not violating Plaintiff's constitutional

5

protection from deprivation without due process of law. Plaintiff's first vehicle was impounded in February, 2010, thirteen years after the Pennsylvania legislature enacted Section 6309.2 on December 10, 1996. Additionally, there is evidence that, for each impoundment, the operator of the vehicle was cited for violations that lead to vehicle immobilization under Section 6309.2.

Defendants provide Plaintiff's extensive history of Philadelphia Traffic Court Violations, spanning from 1997 up to the present day and which consist of an outstanding balance of $17,696.48 and involve numerous citations for, *inter alia*, operating a vehicle with a suspended license, without insurance, with a suspended vehicle registration, and with no vehicle registration. (Defs,' Mot. for Summ. J., Ex. B.)  Among the violations are those that led to the impoundments on February 9, 2010 and March 3, 2011. (Id.)  The first vehicle was towed on February 9, 2010, because Plaintiff was cited for driving with a suspended license and failure to renew his vehicle registration. (Id. at 3, Ex. B.)  The second vehicle was towed on March 3, 2011, because Plaintiff was cited for having no insurance and for operating the vehicle with a suspended or revoked license. (Id., Exs. B, C.)  The third vehicle was towed on March 22, 2011, because the operator, Mr. Keith Bain, was cited for driving with a suspended license. (Id. at 4, Ex. D.)

Government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Two inquiries govern the qualified immunity analysis: (1) whether the facts Plaintiff has "alleged or shown make out a violation of a constitutional right" and (2) whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Further inquiry into the second prong asks whether a "reasonable official knew or should have known that the alleged action violated the plaintiffs' rights." Bayer v. Monroe Cnty. Children and Youth Servs., 577 F.3d 186, 193 (3d Cir. 2009).  The Court may address either prong first "in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.  By following the requirements for impoundment by a statute that had been in existence for over thirteen years, Defendants could reasonably conclude that their actions were proper and that they were not violating Plaintiff's constitutional right.  We thus find that Defendants are also entitled to qualified immunity and for this reason as well the motion for summary judgment is granted in its entirety.

An order follows.

7